UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| ROBERT AZABEURE MITCHELL, ) | |
| ) | |
| Petitioner, ) | Case No. 1:05-cv-47 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| PAUL RENICO, ) | |
| ) | **OPINION** |
| Respondent. ) | |
| ) | |

      This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving concurrent terms of 30-to-75 years and 18-to-75 years on his conviction for second-degree murder, MICH. COMP. LAWS § 750.317, and assault with intent to murder, MICH. COMP. LAWS § 750.83. Petitioner is also serving two consecutive terms of two years each for possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The Kent County Circuit Court imposed these sentences on March 26, 2001, after a jury trial. Petitioner's conviction was affirmed by the Michigan Court of Appeals, and the state Supreme Court denied leave to appeal. Petitioner filed the present habeas corpus proceeding on January 18, 2005.

      In brief, petitioner's convictions arose from the shooting of two brothers, Willie Patterson and Phillip Patterson, by petitioner and his brother, Jason Mitchell. Petitioner and his brother were tried jointly before the Kent County Circuit Court. Petitioner's principal defense was that he was acting in lawful self-defense of his brother.

The matter is now before the court on respondent's motion to dismiss this action on the ground that petitioner has not exhausted claims 2, 3, 4, and 6 in the state appellate courts. (Motion, docket # 8). Petitioner has filed an answer to the motion (docket # 36), in which he contends that he adequately presented his federal claims to the state appellate courts. Upon review of the state appellate record, this court concludes that grounds 2, 3, 4, and 6 were not fairly presented to the state courts as issues of federal constitutional law. The court further concludes, however, that those claims are plainly meritless and are not supported by any clearly established decision of the United States Supreme Court. Consequently, rather than dismissing this action on grounds of exhaustion, the court will dismiss claims 2, 3, 4, and 6 on the merits and order respondent to file a substantive answer to the remaining habeas corpus claims.

## Discussion

### I. Exhaustion of State Remedies

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Petitioner bears the burden of showing exhaustion. *See Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 844; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). "To provide the state with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of

discretionary review), thereby alerting the court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). To fairly present a claim, it is not enough that all the facts necessary to support a federal claim were before the state court or that a somewhat similar state law claim was made. *See Anderson*, 459 U.S. at 6; *Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986); *see also Duncan*, 513 U.S. at 366 (mere similarity of claims is insufficient to exhaust). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66.

Because the exhaustion doctrine requires a petitioner to present his federal constitutional claims to the state's highest court, this court has carefully reviewed the "Brief in Support of Application for Leave to Appeal," filed by the State Appellate Defender Office (SADO) in the Michigan Supreme Court on September 2, 2003. (*See* Michigan Supreme Court Record, case no. 124559, this court's docket # 34). The appellate brief filed by SADO falls into an unfortunate pattern that this court has discerned in many appellate briefs filed by that office in recent years. With regard to each of the appellate claims now under consideration, the brief sets forth extensive argument under state law, supported by citation and analysis of numerous state authorities. The only allusion to the existence of a federal constitutional claim is contained in a cryptic citation to the Fourteenth Amendment, buried either in the section heading or the text of the brief, but unadorned by any analysis or citation of substantive authority. This appears to be an effort by SADO to "federalize" an essentially state-law issue, without any real effort to bring to the state court's attention the nature and substance of a federal constitutional claim.

Examination of the appellate brief presented by SADO on behalf of petitioner on each of the four challenged grounds displays this pattern. Appellate ground II challenged the introduction of allegedly inadmissible rebuttal testimony by the prosecutor. The heading of the argument read as follows:

> II. THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED DEFENDANT A FAIR TRIAL BY ALLOWING THE PROSECUTOR TO INTRODUCE INADMISSIBLE AND HIGHLY INFLAMMATORY REBUTTAL TESTIMONY. US CONST AM XIV; MICH CONST ART I, SEC 17.

(Brief at 24). The brief devoted five and a half pages to discussion of this issue, which the brief identified as reviewable for abuse of discretion. The brief contained extensive discussion concerning appropriate rebuttal testimony under state-law principles. The only mention of federal constitutional principles or authorities appeared in a single sentence:

> Defendant was deprived of the due process right to a fair trial. US Const, Ams V, XIV; Const 1963, art 1, § 17; Walker v Engle, 703 F2d 959, 962-963 (CA 6, 1983).

(Brief at 24). *Walker v. Engle*, the only federal authority cited, stands for the proposition that errors of state law generally do not form the basis for habeas corpus relief, but may do so in exceptional circumstances, where the errors deprive the defendant of a fair trial. 703 F.2d at 962-63. This principle, while undoubtedly true, fails to provide any specific authority justifying relief in the present case. *Walker* had nothing to do with allegedly improper rebuttal testimony. Petitioner's appellate brief was insufficient to alert the state courts of the violation of any particular constitutional right and did not even address the issue of how the allegedly improper rebuttal testimony deprived petitioner of a fair trial under federal principles.

   Appellate ground III challenged the circuit judge's decision to try defendant and his brother together. The argument heading read as follows:

> III. THE TRIAL COURT ERRED REVERSIBLY AND DENIED DEFENDANT HIS RIGHT TO DUE PROCESS IN DENYING THE MOTION TO SEVER, OR TO GRANT SEPARATE JURIES, OR TO GRANT THE REQUESTED MISTRIAL. US CONST AM XIV; MICH CONST ART I, SEC 17, 20.

The sum and substance of the federal constitutional argument was as follows:

> The Constitutional rights to a jury trial and to due process entitle the accused to a fair jury trial. US Const Ams VI, XIV.

(Brief at 29-30). Again, the body of the text identified the issue as one reviewed for abuse of discretion. The argument revolved around specific Michigan Court Rules and cases decided thereunder. The brief did cite *Zifiro v. United States*, 506 U.S. 534 (1993), but *Zifiro* did not articulate any federal constitutional principle. Rather, as the appellate brief properly pointed out, *Zifiro* was an interpretation of Rules 8(b) and 14 of the Federal Rules of Criminal Procedure. The brief did not identify any specific constitutional right involved in the decision not to sever petitioner's trial from that of his brother.

   Appellate issue IV was presented as follows:

> IV. THE TRIAL COURT ABUSED ITS DISCRETION AND THE PROSECUTOR DENIED DEFENDANT A FAIR TRIAL BY IMPROPERLY CROSS-EXAMINING HIM CONCERNING PRIOR CRIMINAL JUVENILE ADJUDICATIONS. US CONST AM XIV; MICH CONST ART I, SEC 17.

(Brief at 38). Petitioner's appellate counsel presented the question as one of abuse of discretion, *id.*, and devoted six pages of argument to the state-law question of when the prosecution should be permitted to cross-examine a defendant with regard to his previous criminal history in response to

direct testimony that "opens the door" to such evidence. Again, the brief contained no identification or analysis of a federal constitutional issue, but merely set forth the talismanic invocation of violation of the right to a fair trial:

> Admission of this evidence violated Mr. Mitchell's Due Process right to a fair trial and impartial jury. US Const, Am V, VI, XIV; Const 1963, art 1, §§ 17, 20.

(Brief at 40). The only federal case cited was *United States v. Bender*, 265 F.3d 464 (6th Cir. 2001), which did not involve the discussion of any federal constitutional right. Rather, *Bender* was merely review of a federal criminal trial in which the trial court allowed into evidence details of the defendant's previous drug conviction to rebut defendant's statements on direct examination that she had never sold drugs. 265 F.3d at 471. No constitutional issue was involved in *Bender*. Consequently, all of the authority set forth in support of appellate ground IV related to this evidentiary issue, not any question of federal constitutional law.

Finally, appellate ground VI was captioned as follows:

> VI.   DEFENDANT WAS DENIED A FAIR TRIAL, BY THE PROSECUTOR'S USE OF A WEAPON WHICH WAS NOT THE WEAPON INVOLVED IN THE OFFENSE TO INFLAME THE JURY'S PASSIONS.

(Brief at 48). The issue was whether the introduction of an SKS rifle as evidence demonstrative of the type of weapon used in the murder was prejudicial. Because this evidence had not been the subject of an objection at trial, the brief invoked the plain error test. The five pages of argument discussed only principles of evidence under state law. Although citations to federal criminal cases were contained in block quotes, none of the cases purported to apply a rule of federal constitutional law. Rather, each case was a straightforward application of rules of relevance. Section VI of the

brief ended with the only hint of the existence of a federal claim: "Defendant was denied due process of law, US Const Am XIV, and reversal is required." (Brief at 52).

This court strongly disapproves the "minimalist" approach found in this and other briefs filed by the State Appellate Defenders Office. This approach appears designed for only one purpose: to "federalize" an essentially state-law issue and thereby create an entree for a subsequent federal habeas corpus argument, in the most subtle and stealthy manner possible. No serious effort is expended to alert the state court of the federal nature of a claim or, for that matter, to even identify the claim in constitutional terms. The Sixth Circuit Court of Appeals has repeatedly found insufficient such cryptic and cursory allusions to the denial of federal rights. Almost twenty years ago, the court held as follows:

> To fairly present his constitutional arguments to the state courts required more than the use of a generalized catch-all phrase which merely alleged the deprivation of a fair trial under the United States Constitution. Such a catch-all provision does not adequately apprise the state courts of the constitutional theory to be relied upon at appellate review, especially under circumstances where the only legal theory presented to the state courts was predicated entirely upon state evidentiary law.

*Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987). Since the *Rose* decision, the Court of Appeals has on numerous occasions found such talismanic invocations of a due-process violation, buried in the discussion of an otherwise state-law issue and unadorned by citation to federal constitutional authorities or analysis, to be insufficient to meet the fair presentation requirement of the exhaustion doctrine. *See, e.g., Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1653 (2005); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Most recently, the Court of Appeals made the following observations, which apply with equal force to the present case:

> Blackmon's only citations to federal authority in his state briefs were (1) claims in his brief headings and conclusions that admission-of-evidence errors and

> prosecutorial misconduct violated his rights to a fair trial and due process, and (2) secondary citations to federal cases to support his state-based evidentiary and misconduct claims. He did not cite federal case law identifying how errors such as those at his trial constitute denials of "fair trial" and "due process" rights, nor how his case mirrored cases in which such denials have been found. Concomitantly, he failed to develop any cogent arguments regarding those rights beyond the naked assertion that they were violated. Such presentation is insufficient. *See Hicks*, 377 F.3d at 553 (holding that a petitioner merely arguing that the prosecutor's opening statement amounted to "argu[ing] facts not in evidence" violated his constitutional right to a fair trial failed to fairly present a constitutional confrontation clause claim to the state courts); *McMeans*, 228 F.3d at 681 (citing *Petrucelli*, 735 F.2d at 688-89) (noting that general allegations of the denial of rights to a "fair trial" and "due process" do not fairly present claims that specific constitutional rights were violated). To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments.

*Blackmon v. Booker*, 394 F.3d 399, 400-01 (6th Cir. 2004).

Under *Blackmon* and the Sixth Circuit cases that preceded it, the minimalist efforts of petitioner's appellate counsel fail to satisfy the requirement that petitioner fairly present the substance of his federal constitutional claims to the state's highest court. The court therefore finds that claims 2, 3, 4, and 6 remain unexhausted in the state courts.

### II.     Lack of Merit

In most circumstances, a "mixed petition," that is, one containing both exhausted and unexhausted claims, must be dismissed. *See Rose v. Lundy*, 455 U.S. 509 (1982). The Supreme Court has recently recognized that, in lieu of dismissal, the court retains discretion to stay a habeas corpus proceeding in order to allow the petitioner to return to state court for purposes of exhaustion. *See Rhines v. Weber*, 125 S. Ct. 1528 (2005). The Court instructed, however, that a district court would abuse its discretion in staying proceedings to allow exhaustion of claims that are "plainly

meritless." 125 S. Ct. at 1535. This is consistent with the provisions of the Habeas Corpus Act, which grant the court authority to deny a claim on its merits notwithstanding a failure to exhaust the claim in state court. 28 U.S.C. § 2254(b)(2). In the present case, the court determines that staying this proceeding in order to allow petitioner to return to state court would encourage a futile and wasteful exercise, as none of the four unexhausted claims presents any meritorious constitutional issue.

### A.  Standard of Review

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005)(citations omitted). If a state court adjudicated the claim, AEDPA standards must be applied. 28 U.S.C. § 2254(d). Thus, even in instances where a state court has not clearly articulated its reasoning, if the circumstances suggest that the state court actually considered and decided the issue, the review is not *de novo,* but is limited by the deferential AEDPA standards. *Onifer*, 255 F.3d at 316; *Harris*, 212 F.3d at 943. *De novo* review is restricted to instances where the state court did not address the merits of a claim. *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005) ("[W]hen a claim has not been adjudicated on the merits in State Court

proceedings, and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA.") (citations omitted).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003)(quoting *Williams*, 529 U.S. at 412). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *Miller v. Webb*, 385 F.3d 666, 672 (6th Cir. 2004)(describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry"). "'Federal Courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.'" *Payne*, 418 F.3d at 656 (quoting *Cone v. Bell*, 125 S. Ct. at 853). "The state court decision need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, 'so long as neither the reasoning nor the result of the state court decision contradicts them.'" *Dennis*, 354 F.3d at 517-18 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

B.  Substantive Claims

1.  Improper Rebuttal Testimony

In ground II of his habeas petition, petitioner asserts that the trial court abused its discretion by allowing the prosecutor to introduce "inadmissible and highly inflammatory" rebuttal testimony. In his supporting *pro se* brief, petitioner cites numerous federal authorities that do not appear in any of his state-court appellate submissions. None of these authorities, however, enunciates a clearly established constitutional rule abridged by the state trial court. Petitioner's lead case, *Oregon v. Kennedy*, 456 U.S. 667 (1982), could not be more inapposite. *Kennedy* was decided under the Double Jeopardy Clause of the Sixth Amendment. The other federal authorities cited by petitioner are similarly inapplicable.

The state Court of Appeals, the only state appellate court to give substantive attention to petitioner's direct appeal, treated the issue as arising under state evidence law, which focuses on the question whether evidence presented in rebuttal is properly responsive to evidence introduced or a theory developed by the defendant. (Op. at 10). Applying this rule, the Court of Appeals found

that the trial judge did not abuse his discretion. Upon review of the record, this court concurs. Petitioner has failed to show even a violation of state evidence law, let alone an error so egregious that it deprived him of a fundamentally fair trial.

### 2.     Denial of Motion to Sever

Petitioner's ground III challenges the trial judge's refusal to sever petitioner's trial from that of his brother and co-defendant, Jason Mitchell, who was petitioner's accomplice in the murder and assault. Contrary to the impression raised in petitioner's brief, this case presents no issue under *Bruton v. United States*, 391 U.S. 123 (1968), because the prosecutor did not seek to admit any confession from the co-defendant. Rather, the matter was one of trial court discretion.

Petitioner relies heavily on *Zifiro v. United States*, 506 U.S. 534 (1993), which, as noted above, did not enunciate a rule of constitutional law but merely represented an application of the Federal Rules of Criminal Procedure. Indeed, the United States Supreme Court has remarked that the denial of a motion for severance does not in and of itself implicate constitutional rights. *United States v. Lane*, 474 U.S. 438, 446 n.8 (1985). The constitution is implicated only when the failure to sever trials is so prejudicial that it imperils a defendant's right to a fair trial. *Id.* Consequently, a "petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). In the present case, the only argument presented in favor of severance is that the co-defendant, Jason Mitchell, was being charged with a home invasion, which was allegedly unrelated to the offenses with which petitioner was charged. The prosecution, however, argued that the home invasion, which occurred only twenty to forty minutes before the shooting, was the catalyst for all

of the criminal activity on the day in question. Applying the state rules of criminal procedure, the Michigan Court of Appeals determined that the crimes "were related for purposes of the permissive joinder statute." (Op. at 15). The court pointed out that the crimes occurred within a very short time of each other, in the same neighborhood, and that the first crime (the home invasion) precipitated the subsequent shootings. The court therefore found that the crimes were part of a series of related or connected acts. *Id.* Finally, the court found no prejudice to petitioner.[1]

This court's review of the record indicates that petitioner suffered no prejudice. At the joint trials, contrary to petitioner's intimations, the prosecutor did not attempt to cast blame on petitioner for the earlier home invasion. The prosecutor did, however, attempt to tie each of the crimes together and to show that the earlier home invasion created the animosity leading to the assault and murder for which petitioner was charged. In these circumstances, no constitutional issue arises. Petitioner cannot possibly meet his burden of showing that the decision of the state court of appeals deprived him of a clearly established right enunciated by the Supreme Court, nor can he bear the "heavy burden" of showing prejudice from joint trials.

### 3. Improper Cross-Examination

In habeas ground IV, petitioner alleges that the trial court abused its discretion by allowing the state prosecutor to attack petitioner's credibility with improper cross-examination. The subject matter of the allegedly improper cross-examination concerned petitioner's prior criminal juvenile adjudications. The appellate briefs treated this issue as arising under the state evidence rules, and the state Court of Appeals analyzed it as such. The court determined that when an accused

---

[1] The court further found that other aspects of petitioner's argument, such as the necessity to empanel a separate jury, had been abandoned on appeal because they had not been briefed.

offers evidence of a trait of character, he places his character in issue and the prosecution is permitted, pursuant to state Evidence Rule 405(a), to cross-examine him about relevant specific instances of conduct. Applying state evidence law, the state appellate court determined that petitioner had attempted to portray himself in a false light during direct examination and that he therefore opened the door for questioning by the prosecutor about his juvenile record. On this basis, the appellate court found no abuse of discretion under state law. (Op. at 17).

In the absence of extraordinary circumstances rising to the level of a due-process violation, such determinations of state evidence law are not reviewable on habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Biros v. Bagley*, 422 F.3d 379, 390 (6th Cir. 2005). Petitioner nevertheless invokes both *Oregon v. Kennedy*, 456 U.S. 667 (1982), and *Davis v. Alaska*, 415 U.S. 308 (1974), as articulating clearly established law contravened by the state courts. Defendant's argument is frivolous. As noted above, *Kennedy* is a decision under the Double Jeopardy Clause and has no bearing on any issue in the present case. *Davis v. Alaska* was decided under the Confrontation Clause and stands for the proposition that a defendant must be allowed to impeach the credibility of a state witness by cross-examination aimed at possible bias derived from the witness's probationary status as a juvenile delinquent, despite the state's interest in preserving the confidentiality of juvenile records. *Davis* has nothing to do with the issue presented by this case, which is unrelated to the Confrontation Clause. The other federal decisions cited by petitioner are either inapposite or involve a straightforward application of evidence rules, not constitutional principles. The Supreme Court has never held that a defendant who attempts to portray himself as an innocent youth on direct examination is immune from relevant cross-examination.

4. Demonstrative Evidence

Finally, petitioner asserts that he was denied a fair trial by the prosecutor's introduction of an assault rifle into evidence. The state Court of Appeals analyzed this issue for plain error, because petitioner had not objected at trial. Consequently, on habeas corpus review, ground VI is undoubtedly subject to the defense of procedural default, arising from the state Court of Appeals' invocation of a state procedural rule preventing plenary review.

Leaving aside procedural defenses, it is clear that this issue comprehends no federal constitutional right. The state Court of Appeals analyzed the issue under state evidence law governing admission of demonstrative evidence. (Op. at 18-20). The appellate court recognized that the weapon admitted into evidence was not the murder weapon, but determined that it was appropriate demonstrative evidence, given the foundation laid by the prosecution. Significantly, the Court of Appeals cited eyewitness testimony that "the gun Robert Mitchell used was an SKS rifle with a banana clip." (Op. at 20). This finding, which is presumed to be correct, negates any claim that introduction of the demonstrative SKS rifle was inflammatory and prejudicial and somehow gave the jury a false impression concerning the nature of the murder weapon. Additionally, the jury was specifically informed that the weapon was not the murder weapon, but was only admitted for demonstrative purposes. *Id.* In these circumstances, petitioner cannot possibly show the level of egregious error that might rise to a constitutional violation.

**Conclusion**

Respondent is correct that claims 2, 3, 4, and 6 in the habeas corpus petition are not properly exhausted. Upon examination of the merits of those claims, however, the court finds them

to be plainly insubstantial. 28 U.S.C. § 2254(b)(2) allows the court to deny a habeas claim on its merits, notwithstanding the failure to exhaust the claim in the state courts. Consequently, the court will enter an order dismissing claims 2, 3, 4, and 6 of the petition on their merits and directing the respondent to file a substantive answer to the remaining claims.

Date:   October 19, 2005              /s/ Robert Holmes Bell
                                       ROBERT HOLMES BELL
                                       CHIEF UNITED STATES DISTRICT JUDGE